IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

VICTORIA LYNN SOMMERS,
      Plaintiff,

vs.                              Case No.: 5:14cv163/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
      Defendant.
_____/

**MEMORANDUM DECISION AND ORDER**

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* docs. 8, 9). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner of the SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence and comport with proper legal principles. Thus, the decision of the Commissioner is affirmed.

I.      PROCEDURAL HISTORY

On November 29, 2012, Plaintiff filed an application for DIB; she identified her alleged disability onset date as May 1, 2011, but she later amended this date to July 15, 2011 (tr. 32).[1] Plaintiff's application was denied initially and on reconsideration. Thereafter, she requested a

_____

[1] All references to "tr." refer to the transcript of SSA record filed on October 30, 2014 (doc. 11). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

hearing before an administrative law judge ("ALJ"), who held a hearing on November 19, 2013, at which Plaintiff—who was represented by counsel—and a vocational expert ("VE") testified.  On December 6, 2013, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 32–47).  The Appeals Council ("AC") subsequently denied Plaintiff's request for review (tr. 1–8, 9–15).[2]  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.    FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following findings (see tr. 32–47):

(a)    Plaintiff meets the insured status requirements of the Act through June 30, 2017[3];

(b)    Plaintiff has not engaged in substantial gainful activity ("SGA") since May 1, 2011, her initial alleged onset date;

(c)    Plaintiff has the following severe impairments:  cervical degenerative disc disease of C5-6 with radiculopathy and stenosis, cervicalgia, mild lumbar degenerative disc disease, lumbago, carpal tunnel syndrome, and gastroesophageal reflux disease;

(d)    Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(e)    Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with some exceptions[4];

---

[2]  The AC first denied Plaintiff's request for review in a letter dated April 11, 2014 (tr. 9–15), stating that the three additional items of evidence shown on an attached list did not provide a basis for changing the ALJ's decision (tr. 9–10).  In the text of its letter the AC also referenced two other items of evidence, which it stated pertained to a date after the ALJ's decision and therefore did not affect that decision (tr. 10).  In a second letter, dated June 27, 2014, the AC indicated that on June 2, 2014, Plaintiff had requested that all of the additional evidence submitted with her request for review be noted on the list of exhibits (tr. 1).  Granting Plaintiff's request, the AC set aside its April 11, 2014, action in order to formally exhibit all of Plaintiff's additional evidence (and her correspondence) on an attached list (see tr. 1, 6).  The AC then again denied Plaintiff's request for review (tr. 1).

[3]  Although Plaintiff remains insured for DIB purposes through June 30, 2017, the time frame relevant to her claim for DIB technically is July 15, 2011 (the amended date of alleged onset), through December 6, 2013 (the date of the ALJ's decision).

[4]  The ALJ found that Plaintiff
can frequently use both hands for fine manipulation, but only occasionally use both hands for repetitive action such as in pushing and pulling of arm controls, simple grasping, and reaching (including overhead).  She can occasionally use both feet for repetitive movement such as in the pushing and pulling of leg controls.  She can occasionally stoop, crouch, kneel, crawl, balance, and

(f)      Plaintiff is capable of performing her past relevant work as a photo clerk (specific vocational preparation ("SVP") level "unskilled").  This work does not require the performance of work-related activities precluded by Plaintiff's RFC.

(g)      In the alternative, in light of Plaintiff's age,[5] education, work experience, RFC, and skills transferable from prior work, a finding of "not disabled" is appropriate under the framework of Medical-Vocational Rules 202.14, 202.15, and 202.07.[6]  The VE testified that representative jobs that Plaintiff can perform, and which exist in significant numbers in the national economy, include file clerk (SVP level "semi-skilled"), storage facility rental clerk (SVP level "unskilled"), and ticket seller (SVP level "unskilled");

(h)      Plaintiff has not been under a disability, as defined in the Act, from her initial alleged disability date through the date of the ALJ's decision.

III.      STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may

---

climb stairs and ramps, but she can never climb ladders, ropes or scaffolds.  She can tolerate occasional exposure to unprotected heights, moving machinery, driving automotive equipment, and marked changes in temperature and humidity.  Plaintiff experiences a moderate degree of pain, which occasionally interferes with concentration, persistence, and pace but does not require that she abandon her work or work station.  This is not a continuous concept and occurs intermittently.  Plaintiff can respond appropriately to supervisors, coworkers, customers, and/or other members of the general public.  Plaintiff can use judgment in simple, one or two-step work-related decisions.  Plaintiff can occasionally use judgment in detailed or complex work-related decisions.  Plaintiff can deal with changes in a routine work setting.  Plaintiff can understand, remember, and carry out simple one and two-step instructions.  Plaintiff can occasionally understand, remember, and carry out detailed or complex instructions.  Plaintiff can maintain attention, concentration, or pace for periods of at least two hours, with regular breaks.  Plaintiff can maintain activities of daily living.  Plaintiff experiences no repeated, extended episodes of decompensation.

(tr. 37).

[5]  At the age of fifty-two years on her initial and amended alleged disability onset dates in 2011, Plaintiff was a person "closely approaching advanced age."  At the time of the ALJ's December 6, 2013, decision Plaintiff was fifty-four years old.  Because Plaintiff would attain age fifty-five years within six months of the ALJ's decision, however, the ALJ determined that Plaintiff could be considered a person of "advanced age" (tr. 38).

[6]  The Medical-Vocational Rules, also referred to as "the Grids," consist of a matrix based on exertional levels and vocational factors that may be used to direct a conclusion of disabled or not disabled or they may be used as a framework for making that determination.  *See generally* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).  The matrix results constitute "administrative notice" as to the number of jobs that exist in the national economy at the various skill and exertional levels.  Thus, when all of a  claimant's vocational factors coincide with the criteria in the matrix, "the existence of jobs is established."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(b).

reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh  the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g),[7] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing SGA, she is not disabled.

---

[7]   In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or Supplemental Security Income ("SSI"), but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, citations in this Order should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

2.      If the claimant is not performing SGA, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing SGA and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY[8]

A.      Personal and Employment History

---

[8] With respect to the medical evidence, the court has largely relied on the parties' memoranda for the references to the record that pertain to Plaintiff's claims (see docs. 20, 21), in particular Plaintiff's memorandum because she bears the burden of demonstrating the Commissioner's decision to deny benefits was incorrect.  In addition, the November 3, 2014, Scheduling Order in part requires the parties to file memoranda in support of their respective positions which specifically cite the record by page number for all factual contentions (doc. 13).  The Scheduling Order cautions that the failure to do so "will result in the contention(s) being disregarded for lack of proper development" (id. at 2).  Thus, factual contentions that are not supported by specific citations to the record are disregarded.

The court has augmented the parties' references to the record and factual information, where deemed appropriate, for clarity and completeness.  It has not outlined the entire record, including the evidence of Plaintiff's mental health records that was before the ALJ and the AC (although Plaintiff cites some of them).  A discussion of these records is not needed here because, as the Commissioner notes, Plaintiff does not challenge any findings pertaining to her alleged mental limitations.  Accordingly, the court outlines and discusses only the medical evidence pertaining to Plaintiff's alleged physical limitations, although it includes the mental restrictions imposed by the ALJ in his decision and hypothetical questions posed to the VE.

Plaintiff completed high school (tr. 46, 62), and she is able to communicate in English (tr. 46). She has past relevant work as a clerk for the United States Postal Service from 1985 to 2009 and as a short order cook and photo clerk in 2010 and 2011 (tr. 211, 235).

B.    Medical Evidence Before the ALJ

On July 16, 2011, Plaintiff presented to an emergency room in Ohio after being in a motor vehicle accident (tr. 383–85). Magnetic resonance imaging ("MRI") of Plaintiff's cervical spine obtained on July 27, 2011, showed mild posterior spurring and disc bulging at C3–4 and C4–5, with moderate spurring and disc bulging at C5–6 (tr. 381). There was a mild impression on the ventral cervical cord, which appeared pinched from the anterior and posterior aspects, with marked central canal stenosis down to 7 mm and no cord myelomalacia (*id.*). The C2–3 level was normal (*id.*). An MRI of the thoracic spine identified disc space narrowing at T6–T7 and T7–T8, with a small disc protrusion at T7–8, but no central canal or neural foraminal stenosis (tr. 379). A lumbar spine MRI showed stable mild disc space narrowing at L3–L4 with an associated small broad-based disc bulge, but no significant stenosis (tr. 380).

At an August 3, 2011, physical therapy visit, Plaintiff's diagnoses were identified as cervicalgia, neck sprain, lumbago, and lumbar sprain (tr. 357). Her reported pain level was 5 on a scale of 1–10, with 10 being the most severe pain (*id.*). Plaintiff's discharge assessment dated August 25, 2011, notes that on August 22, 2011, she reported a pain level of 3 to 4 (tr. 337); the assessment opines that Plaintiff's prognosis was "good" with continued therapy and a home exercise program (tr. 338).

Plaintiff presented to Achraf Makki, M.D., a physician with the Brain and Spine Center, on December 13, 2011, with a complaint of severe [8/10] neck pain and back pain (tr. 554). Reviewing Plaintiff's prior medical records, Dr. Makki observed that Plaintiff's cervical spine MRI showed a mild disc bulge at "C3, 4, 5," and central canal stenosis, and her lumbar spine MRI showed mild disc protrusion at L3–4 with mild left lateral stenosis (tr. 557). Dr. Makki prescribed Baclofen and Lortab (*id.*); later in December, he also administered occipital nerve blocks and trigger point injections for Plaintiff's neck pain (tr. 552–53).

On January 3, 2012, Plaintiff reported to Dr. Makki that she continued to have some pain in her neck secondary to muscle spasms but that the spasms were responding well to treatment (tr.

548).  Physical examination was largely normal, other than with respect to the musculoskeletal system, as to which Dr. Makki found multiple trigger points, significant paraspinal muscle tenderness, and decreased range of motion of the cervical spine (tr. 545, 549).   Dr. Makki administered additional trigger point injections because they were "giving [Plaintiff a] significant amount of relief," and he prescribed Ambien for Plaintiff's problems with sleeping (tr. 550–51).  On January 27, 2012, Plaintiff returned to Dr. Makki and reported continuing neck pain and muscle spasms, symptoms which she described as being moderate in severity and unchanged (tr. 544). Upon examination, Dr. Makki noted significantly decreased spinal range of motion secondary to severe muscle tension, significant muscle tenderness, and taut banding in the form of trigger points in multiple spinal segments (tr. 545).  Dr. Makki noted that he had reviewed Plaintiff's cervical spine MRI and the recommendation of a consultant, Dr. Stringer (*id.*).  Dr. Makki stated that he would order facet injections "to help decrease [Plaintiff's] pain, as surgery is not warranted at this point" (*id.*).  He also prescribed the use of Lortab and Baclofen (tr. 546).   On February 23, 2012, and March 1, 2012, Plaintiff received additional facet injections for her complaints of neck pain (tr. 542, 543).  At her March 27, 2012, visit to Dr. Makki, Plaintiff reported "aching" neck pain which occurred "frequently" and was "moderate in severity and improving" (tr. 539).  Dr. Makki advised Plaintiff to use Lortab, Baclofen, and Lyrica and to undergo routine massage therapy (tr. 541).

On June 22, 2012, Plaintiff complained to Dr. Makki of constant, aching pain which was "moderate in severity and worsening" (tr. 536).  Her range of motion was described as significantly decreased secondary to severe muscle tension (tr. 538).  Dr. Makki prescribed the use of Celebrex, Flexeril, Lyrica, Lortab, and Ambien, and he also advised more physical therapy (*id.*).   Plaintiff attended eighteen physical therapy sessions between July 2012 and September 2012 (tr. 405–09, 411–15, 421–39).   In July 2012, Plaintiff was described by a physical therapist as having reduced strength in the upper extremities  (tr. 408).[9]  On August 21, 2012, Plaintiff reported to Dr. Makki that she had experienced "excellent improvement with physical therapy" (tr. 535).  Her symptom control was described as "good" (tr. 533).  At discharge from physical therapy, on September 10, 2012,

---

[9]  Physical therapists are not included in the list of "acceptable medical sources" whose opinions may be considered in determining the existence of an impairment.  20 C.F.R. § 404.1513(a).  They are considered "other sources," whose opinions may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. § 404.1513(d).

Plaintiff reported "overall improvement in symptoms," with neck pain intensity of 2/10 at rest and 6/10 with activity; she also reported a back pain level of 2/10 at rest and 4/10 with activity (tr. 421). Plaintiff was prescribed a home traction device for treatment of her neck pain (tr. 424, 427, 535).

Plaintiff again presented to Dr. Makki on December 4, 2012 (tr. 529). Plaintiff's reported neck pain was described as aching, constant, and "moderate in severity (5 out of 10) and unchanged" (*id.*). Dr. Makki noted Plaintiff's previous excellent response to physical therapy and facet injections (tr. 531). Most physical findings were unremarkable, including with respect to upper body strength, which was normal, although some hyperreflexia was noted (tr. 530). Plaintiff's symptom control was "good" (tr. 529).

At a March 4, 2013, visit, Plaintiff reported aching, constant neck pain of moderate severity, or 5/10, and constant lower back pain with a severity of 7/10 (tr. 524). Plaintiff also reported having hand tremors and spasms throughout her body (*id.*). Other than back pain, a physical examination was largely unremarkable; it was noted that neck pain and stiffness were not present (tr. 525–26), and Plaintiff's symptom control reportedly was good (tr. 524). Dr. Makki noted that if Plaintiff's neck pain increased, repeat cervical facet injections would be administered (*id.*). Due to the neuropathic features of Plaintiff's complaints, Dr. Makki ordered a nerve conduction study and electromyogram, as well as an MRI of the lumbar spine (*id.*). A March 18, 2013, nerve conduction study and electromyogram for cervical radiculopathy showed electrophysiologic evidence of mild median neuropathy at the right wrist as seen in carpal tunnel syndrome (tr. 590). Plaintiff was noted to have a history of bilateral carpal tunnel release procedure performed ten years prior (*id.*). Lower extremity nerve conduction testing for lumbar radiculopathy and piriformis syndrome was normal (tr. 588). A March 12, 2013, lumbar spine MRI report noted mild degenerative disc disease at L2–L3 and L3–L4 (tr. 594).

Plaintiff reported constant, aching neck pain and radiating lower back pain with a severity level of 5/10 on April 4, 2013 (tr. 519). Dr. Makki assessed mild degenerative disc disease of the lumbar spine, mild median neuropathy of the right wrist, and sleep myoclonus (tr. 521). Plaintiff was advised to continue her current prescriptions for pain, given a wrist splint to wear at night for carpal tunnel syndrome, and prescribed medication for sleep myoclonus (*id.*).

A State agency physician, Edmund Molis, M.D., reviewed Plaintiff's records and prepared a physical RFC for her in April 2013 (tr. 117–19).  In Dr. Molis' opinion, Plaintiff was capable of lifting and carrying up to ten pounds frequently and twenty pounds occasionally, sitting for a total of six hours in an eight-hour workday, and standing/walking for a total of six hours in an eight-hour workday (tr. 117).  Her ability to push and/or pull (including operating hand and/or foot controls) was unlimited (*id.*).  Plaintiff had no postural limitations but reaching with the left upper extremity was frequently limited.  The ability to handle, finger, and feel was unlimited (tr. 118).

In September and October 2013 Plaintiff underwent eight sessions of physical therapy (tr. 614–23).  At intake on September 9, 2013, the therapist noted Plaintiff had limited range of motion and reported "significant pain" that was worse while sleeping or lying down (tr. 623).  By October 4, 2013, Plaintiff still had pain but it was "somewhat better" (tr. 618), and on October 16, 2013, she reported continued improvement in her symptoms (tr. 616). At discharge on October 21, 2013, Plaintiff's pain had decreased twenty-five percent, and her overall symptoms had decreased by thirty percent (tr. 614, 615), although she continued to report left buttock pain of 5/10 at rest and up to 7/10 with activity. Exacerbating factors included walking, stooping, or standing for more than fifteen minutes (tr. 614).  Plaintiff stated that she could perform all of her activities of daily living except cooking and washing dishes, as to which she was limited due to subjective pain and discomfort (tr. 615).  According to the therapist, Plaintiff had shown improvement in subjective pain and tolerance to activities of daily living.  It also appeared she had reached maximum improvement and would be able to maintain the thirty percent reduction in overall symptoms with home exercises.

C.     Medical Evidence Presented to the AC

After issuance of the ALJ's decision on December 6, 2013, Plaintiff submitted records to the AC which documented a January 2014 office visit with Dr. Makki (tr. 637–42).  At that visit, Plaintiff reported constant, aching neck pain of moderate severity, or 6/10, and worsening (tr. 637).  She also reported headaches and upper extremity weakness (*id.*).  Dr. Makki's findings with respect to the musculoskeletal system included moderate tenderness to palpation of the cervical spine, evidence of cervical paravertebral muscle spasm, moderate bilateral tenderness to palpation of the occipital nerve, moderate tenderness to palpation of the facet joints with severe tenderness at C4–5, C5–6, and C6–7.  Under the section of his report titled "Today's Impression," Dr. Makki noted that

he had discussed with Plaintiff that the "natural pathology of the disease [is that it] is expected to progress rather than improve[ ]" and that Plaintiff "has had an increase in neck pain associated with headaches" (tr. 640). Dr. Makki recommended more physical therapy and referred Plaintiff for a functional capacity evaluation ("FCE") (*id.*). In light of the "significant" axial pain Plaintiff was reporting and his findings of facet tenderness, Dr. Makki also decided to proceed with joint facet injections (*id.*, tr. 641), and he ordered a repeat MRI of the cervical spine (tr. 641). The report of this MRI states there are "mild degenerative disc and joint changes in the cervical spine which contribute to mild central canal stenosis at C3–4 and C5–6 and neural foraminal narrowing of varying degrees at several levels in the cervical spine including the right side at C3–4 and bilaterally at C5–6" (tr. 643). Compared with a previous examination dated December 26, 2012, it was noted there was little change (tr. 643–44).

The FCE ordered by Dr. Makki was completed by physical therapist Mohamed Hussein[10] on January 28, 2014 (tr. 647–61). Mr. Hussein opined that Plaintiff put forth maximum effort and was cooperative and that the test results were valid (tr. 647, 660–61). The testing indicated that Plaintiff could lift a maximum of ten pounds occasionally, sit ten minutes at a time for a maximum of two hours per eight-hour workday, stand five minutes at a time for a maximum of one hour per eight-hour workday, and walk for three minutes at a time for a maximum of one hour per eight-hour workday (tr. 658). According to Mr. Hussein, Plaintiff's "current functional abilities and musculoskeletal findings demonstrate that she **cannot work at any level of work** [emphasis in original]. She exhibited functional deficits with the necessary standing, walking, lifting, stooping, twisting and squatting tolerances that are required to perform any essential job demands" (tr. 649).

V.   HEARING TESTIMONY

Plaintiff testified at the administrative hearing that several conditions prevent her from working, including a bulging disc in her neck that her physician told her pressed into her spinal cord (tr. 67). She also has arthritis in her shoulder, problems with her upper and lower back, and carpal

---

[10]  Plaintiff refers to this physical therapist as "Dr. Hussein." While his credentials indicate he holds a doctor of physical therapy degree (*see* tr. 646), they do not reflect that this therapist is a medical doctor or other acceptable medical source. For the purpose of this Order, the court refers to him as "Mr. Hussein."

tunnel disease (*id.*).  Her main problems are with her neck and hands, which worsened after her July 2011 automobile accident and have not improved (tr. 79).  Plaintiff stated that her neck condition causes sharp, shooting pain that travels to her head, as well as causes numbness and tingling in her arms and hands (tr. 68).  She also has sharp, shooting pain in her upper and lower back and numbness and tingling in her legs (*id.*).  "With medication, [she] could keep [her pain level] at a four or a five.  Without, it's seven or eight" (*id.; see also* tr. 69).  The more severe pain lasts for about "an hour or two" and occurs every day when it is time for her to take her medication again (*id.*).  Lifting, stooping, and bending and excessive walking, sitting, or standing worsen her pain (tr. 69).  Plaintiff also has difficulty, bilaterally, with gross manipulation of items approximately one-third of each day (*id.*); with gripping approximately two-thirds of each day (tr. 70); and with fine manipulation approximately three-fourths of each day (*id.*).  Plaintiff thought she could lift five to ten pounds while seated (*id.*), and carry ten to fifteen pounds occasionally (tr. 72–73).  She drops things frequently (tr. 77).  Plaintiff could stand for fifteen to twenty minutes at a time for a total of two hours per workday (tr. 72–73), sit for fifteen to twenty minutes at a time for a total of two hours per workday (tr. 72), and walk for fifteen to twenty minutes for a total of one hour per workday (*id.*).  On an average day, during an eight-hour period Plaintiff needs to lie down and use a heating pad about two to three hours due to pain and poor sleep (tr. 73, 80).  A home traction device for her neck, which she uses several times per week, helps to reduce her pain for several days at a time (tr. 80–81).  Her husband performs most of the household chores, although Plaintiff can do some things around the house and goes shopping with her husband about once per week (tr. 73–74).  Plaintiff watches television approximately six to seven hours per day (tr. 74).

The VE testified that Plaintiff has past work as a short order cook, photo clerk, and postal carrier (tr. 85).  These jobs, as performed by Plaintiff, were generally consistent with the descriptions for the positions in the Dictionary of Occupational Titles ("DOT") (tr. 86).  The "semi skills" Plaintiff acquired working as a postal carrier were transferrable only to the position of file clerk, which is classified as light work (tr. 85).

The ALJ first asked the VE to assume that Plaintiff's testimony was fully credible.  If Plaintiff's testimony were taken as true, the VE testified, Plaintiff could not perform any of her past work or any other work due to her allegations of severe pain up to three hours per day, need to use

a traction device, and sleep problems (tr. 87).  Next, the ALJ asked the VE to assume an individual who could perform light work, with the following restrictions (tr. 88–89).  The individual could occasionally use her hands for simple grasping and for pushing/pulling of arm controls, and she could frequently use her hands for fine manipulation.  The individual could occasionally use her feet for pushing/pulling leg controls, and she could occasionally stoop, crouch, kneel, and crawl.  She could never climb ropes, scaffolds, and ladders.  The hypothetical individual could occasionally climb stairs and ramps, balance, reach overhead, work around unprotected heights, be around moving machinery, be exposed to marked changes in temperature and humidity, and drive automotive equipment.  The individual experienced a moderate degree of pain which occasionally interfered with concentration, persistence, and pace but did not require her to abandon her work station.  The individual could respond appropriately to supervisors, co-workers, and the public.  She could use judgment in completing simple one and two-step work-related decisions and could occasionally use judgment in complex or detailed work-related decisions.  She could deal with changes in the routine work setting.  She could understand, remember, and carry out simple one and two-step instructions and could occasionally do so with respect to detailed or complex instructions.  She could maintain concentration, attention, and pace for at least two hours, with breaks.  She could maintain activities of daily living and did not experience any episodes of decompensation of extended duration.  The VE responded that an individual of this description could perform Plaintiff's past work of photo clerk (tr. 89).  The individual could also, taking into consideration transferrable skills from the position of postal carrier, work as a file clerk (tr. 90).  There were also unskilled jobs the individual could perform, including storage facility rental clerk and ticket seller (*id.*).

The ALJ then changed one element of the hypothetical question:  the individual's moderate degree of pain interfered with concentration, persistence, and pace for one to two hours daily and required her to abandon her work station.  The VE testified that such an individual could not perform any of Plaintiff's past work or any other work (tr. 91).

VI.   ISSUES PRESENTED

The court addresses Plaintiff's grounds for reversal and remand of this case in the following order: (1) the ALJ erred in making his credibility determination; (2) the ALJ erred at step four because Plaintiff's past work as a photo clerk was not SGA and her RFC precludes the performance

of that position.  Also, the ALJ erred at step five because Plaintiff's RFC precludes performance of the file clerk, storage facility rental clerk, and ticket seller jobs; and (3) the AC erred in denying Plaintiff's request for review.  The Commissioner responds that substantial evidence supports her final decision, and thus it should be affirmed.

VII.   DISCUSSION

    A.   Credibility Determination

A claimant may establish that she has a disability through her own testimony regarding her pain or other subjective symptoms.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  Id.   If the ALJ determines under the third prong of the standard that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain, he must then evaluate the extent to which the intensity and persistence of the pain limits the claimant's ability to work.  20 C.F.R. § 404.1529(b).  The ALJ may consider the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence relating to how the pain affects the claimant's daily activities and ability to work.  Id., § 404.1529(c).  "While both the Regulations and the Hand [v. Bowen, 793 F.2d 275, 276 (11th Cir. 1986)] standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."  Elam, 921 F.2d at 1215.  "[P]ain alone can be disabling, even when its existence is unsupported by objective evidence."  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted).  The presence or absence of evidence to support symptoms of the severity claimed, however, is a factor to be considered.  Marbury v. Sullivan, 957 F.2d 837, 839–40 (11th Cir. 1992); Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  Although credibility determinations "are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam), if the ALJ discredits the claimant's subjective

testimony, the ALJ "must articulate explicit and adequate reasons for doing so." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).

In this case, the ALJ concluded that Plaintiff had an underlying medically determinable impairment that reasonably could be expected to cause the pain alleged but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her pain were not entirely credible (tr. 38). In other words, Plaintiff's impairment reasonably could cause pain, but not the severe level of pain alleged by Plaintiff (tr. 44). According to the ALJ, the record evidence was "indicative of moderate pain[,] not severe pain" (tr. 45).

In support of her claim that the ALJ erred in making his credibility finding, Plaintiff points to clinical and/or physical therapy notes from December 2011, June 2012, and October 2013 (doc. 20 at 11, citing tr. 536, 538, 554, 614, in reference to reported pain levels); December 2012 (*id.*, citing tr. 531, in reference to a prescription for narcotic pain medication); and August and December 2012 (*id.* at 12, citing tr. 531, 535, in reference to Plaintiff's receipt of treatment and therapy due to continuing pain). She also points to medical records concerning reduced upper extremity strength, limited range of motion, and muscle spasms (*id.* at 12, citing tr. 408, 531, 545). In addition, Plaintiff contends that her restricted activities of daily living are not inconsistent with her allegations of severe pain and limitations.[11] The Commissioner responds that the ALJ properly found that Plaintiff's pain testimony was not entirely credible because it is inconsistent with the evidence from Dr. Makki that showed her symptoms were well-managed with conservative treatment; the MRI reports of Plaintiff's cervical, thoracic, and lumbar spine generally described mild problems; and Plaintiff's daily activities were inconsistent with disabling limitations.

The record reflects that Plaintiff frequently reported to her health care providers—and also testified at the administrative hearing—that medication and other treatment generally maintained her pain at a moderate level of approximately 5/10 (tr. 68, 531, 535; *see also* tr. 45, 524, 529, 533, 548). It appears that, in the records that were before the ALJ, Plaintiff reported more intense levels

---

[11] Plaintiff cites her statements that most days she does not even get dressed, bathes only once per week, eats dinner only three times per week, and microwaves frozen meals or makes a sandwich. Plaintiff also stated that she is able to do only light housework every three to four weeks and when she does do housework she must take frequent breaks to rest; and she can shop only once per week, which requires one or two hours due to her need for rest breaks (*see* doc. 20 at 13).

of pain only on an intermittent basis to her health care providers (*see, e.g.*, tr. 554 [pain level of 8/10 constantly in neck], 614 [pain level of 7/10 in left buttock with activity]).  Also, Plaintiff does not identify where, if at all, the medical record reflects that she reported to Dr. Makki or others that she experienced severe pain daily for one to two hours prior to taking her medications, as she testified at the hearing, and the court is not aware of any such references.

As Plaintiff contends, in July 2012 her physical therapist noted that her upper extremity strength was slightly reduced (tr. 408).  On at least three subsequent occasions, however—December 2012, March 2013, and April 2013—Dr. Makki reported that Plaintiff's upper extremity strength was normal (tr. 521, 526, 530).[12]  While Dr. Makki noted Plaintiff's reports of muscle spasms during an office visit in January 2012 (tr. 545), at that same visit Plaintiff stated that her muscle spasms were responding well to trigger point injections (tr. 548).  Also, as Plaintiff notes, Dr. Makki referenced Plaintiff's decreased spinal range of motion twice in January 2012 (tr. 545) [and in June 2012 (*see* tr. 538), although Plaintiff does not cite this report].  The court did not, however, locate any references in Dr. Makki's August 2012, December 2012, March 2013, or April 2013 records to physical findings of decreased spinal range of motion or muscle spasms causing severe pain (tr. 519–35).  In fact, as the ALJ noted, in August 2012, with respect to Plaintiff's neck pain, Plaintiff reported improved symptoms with physical therapy (tr. 533), and Dr. Makki noted "excellent improvement with physical therapy" (tr. 535).  In December 2012, as mentioned by the ALJ, Dr. Makki again noted Plaintiff's previous "excellent response to physical therapy and facet injections" and Plaintiff's report of moderate pain [5/10], stating that if her pain increased he would consider giving her additional injections (tr. 531).  Plaintiff's "good symptom control" was also recorded at that visit (tr. 533).  At Plaintiff's March 2013 visit, it was again noted that Plaintiff reported moderate neck pain [5/10] which was unchanged (tr. 524) and that there was good symptom control of her neck pain (*id.*).  In July 2013 Dr. Makki stated that trigger point injections helped to decrease Plaintiff's pain; and in September 2013 he again noted that Plaintiff reported a pain level of 5/10.

---

[12]  Plaintiff argues that the ALJ's credibility determination is also undermined by the findings of the FCE conducted in January 2014 by "Dr. Hussein" and that the AC's error in refusing to address "Dr. Hussein's report also contributed to error in the credibility finding" (doc. 20 at 12 n.4).  Below, the court addresses the AC's refusal to review the ALJ's decision, including its consideration of the January 2014 FCE.

In addition, the objective evidence documents that Plaintiff's conditions were found, at most, to be mild to moderate in degree, not severe. Her July 2011 MRIs of the cervical, thoracic, and lumbar spine mostly revealed mild to moderate changes (tr. 379–381), as did a March 2013 MRI of the lumbar spine (tr. 594). A March 2013 nerve conduction study and electromyogram for cervical radiculopathy showed mild neuropathy (tr. 590), and lower extremity nerve conduction testing was normal (tr. 588). In April 2013, Dr. Makki's assessments included mild degenerative disc disease of the lumbar spine and mild median neuropathy of the right wrist (tr. 521). Also, although these results were not before the ALJ, it is noteworthy that the report of an MRI of the cervical spine conducted in January 2014 showed mild changes and was described as being unchanged from December 2012 (tr. 643–44).

The foregoing medical records support the ALJ's finding that Plaintiff's testimony concerning the level of pain she experiences is not entirely credible. Similarly, as the ALJ found, Plaintiff's acknowledged ability to bathe, feed, and use the toilet without assistance; prepare simple meals; occasionally perform light household chores; shop once a week; watch television up to seven hours per day; and provide some care for her ill husband (tr. 35, 223, 224, 225, 226, 612) suggests that the nature and effects of Plaintiff's symptoms are not as severe as she contends. In short, the court concludes that there is substantial evidence of record in support of the ALJ's conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her pain and other symptoms are not entirely credible. Accordingly, the ALJ's credibility determination should not be disturbed.

B.      Substantial Gainful Activity/Ability to Perform Jobs Identified by ALJ

Plaintiff argues that the ALJ's finding at step four that she could perform her past work as a photo clerk is erroneous because, given her limited annual earnings of only $2,623.16 from the position (*see* tr. 199), it did not constitute SGA. The Commissioner does not directly address Plaintiff's argument, instead contending that even if the ALJ erred at step four the error was harmless because his finding at step five is supported by substantial evidence.

Past relevant work is work that the claimant (1) performed within the last fifteen years, (2) lasted long enough for the claimant to learn how to do the work, and (3)  was performed at the level of substantial gainful activity.  20 C.F.R. § 416.965(a).  "Substantial work activity" is work that involves doing significant physical or mental activities and includes part-time work.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work activity done for pay or profit.  20 C.F.R. §§ 404.1572(b), 416.972(a).  To determine whether a claimant performed substantial gainful activity, the ALJ ordinarily will consider whether wages derived from the work activity exceed minimum thresholds.  20 C.F.R. §§ 404.1574(b), 416.974(b).  "If a claimant receives wages exceeding those set out in an earnings guidelines table, a presumption arises that she was engaged in substantial gainful activity during that period."  Green v. Comm'r, Soc. Sec., 555 F. App'x 906, 908 (11th Cir. 2014) (unpublished), citing 20 C.F.R. §§ 404.1574(b)(2); 416.974(b)(2); and Johnson v. Sullivan, 929 F.2d 596, 598 (11th Cir. 1991) (noting that earnings on income tax returns create a rebuttable presumption that the taxpayer was gainfully employed).  Even if the claimant's earnings are insufficient to raise a presumption of SGA, however, the ALJ can consider other information which may indicate that the claimant engaged in SGA.  See Eyre v. Comm'r, Soc. Sec., 586 F. App'x 521, 524 (11th Cir. 2014) (stating that "[e]ven where the claimant's average monthly earnings were below the amount established by the earnings guidelines, if other evidence indicates that the claimant was engaged in substantial gainful activity" that information may be considered).  Such information may include whether the work performed was "comparable to that of unimpaired people in [the claimant's] community who [were] doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work." Id., citing 20 C.F.R. §§ 404.1574(a)(1), (b)(3)(ii)(A); 416.974(a)(1) (b)(3)(ii)(A).

Social Security regulations set an average monthly-earnings threshold for SGA.  20 C.F.R. §§ 404.1574(b)(3)(i); 416.974(b)(3)(I).  In 2010, the year Plaintiff worked as a photo clerk, the average-monthly-earnings threshold for SGA activity was $1,000.  See http:// www.socialsecurity.gov/OACT/COLA/sga.html (last visited August 2, 2015).  Thus, Plaintiff's average monthly earnings in 2010 for her photo clerk job must have exceeded $1,000 in order for a presumption of SGA to arise.  Based on an annual income of $2,623.16 (see tr. 199), Plaintiff's average monthly earnings for this position would have been only $218.60 for a twelve-month period.

Plaintiff reported, however, that she worked as a photo clerk for a period of approximately six months, from June 2010 to December 2010 (tr. 211).[13]  Thus her actual average monthly earnings were only $437.19, which is still below the $1,000 monthly threshold.  It therefore appears that Plaintiff did not earn enough money as a photo clerk for the work to ordinarily be considered SGA. *See* 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2).

The court finds the record to be sufficient, however, to support by other means the ALJ's finding that Plaintiff's work as a photo clerk in 2010 constituted SGA.  During the hearing, the ALJ asked Plaintiff about the amount of standing required and the amount of weight she had to lift and carry in her past work as a photo clerk (tr. 65).  Also, the ALJ asked the VE if she had reviewed the record in the case and if Plaintiff had performed her past work in a manner that was consistent with the requirements of the DOT; the VE responded affirmatively to both questions (tr. 84, 86).  The DOT outlines the strength, reasoning, math, language, writing, speaking, and specific vocational preparation demands required of the photo clerk position.  *See* DOT, Occupational Code No. 976.687-018.  The record also contains Plaintiff's written description of how she performed the photo clerk job, including the weight of items she lifted and how frequently she did so, and the hours each day she was required to walk, stand, kneel, crouch, grasp large objects, and handle small objects, as well as the weekly hours she worked (at least twenty-four but up to forty hours per week) (*see* tr. 213).  While further inquiry by the ALJ at the administrative hearing into the details of Plaintiff's past work as a photo clerk might have painted an even clearer picture, the court concludes that the evidence of record adequately addresses whether the work performed was comparable to that performed by others and accounts for the time, energy, skill, responsibility, and physical activity involved in the position.  *See, e.g.*, Garnett v. Sullivan, 905 F.2d 778, 780–81 (4th Cir. 1990) (finding claimant's one-hour-per-day job as a school bus driver to be SGA and noting that claimant "performed essentially the same duties performed by other non-disabled school bus drivers," that "there was no evidence that Garnett's disability interfered with the regularity of his job

---

[13] Plaintiff has not argued, much less shown, that this unskilled job did not last long enough for her to learn to perform it.  Indeed, the regulations provide that a worker can usually learn to do unskilled work after a short demonstration or within thirty days.  20 C.F.R. § 416.968(a); 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.00.  Such work neither requires special skills or experience nor imparts work skills; in fact, little specific vocational preparation and judgment are required to perform unskilled work.  *Id.*

performance," and that the amount of time "Garnett spent in work [was not] atypical for his position); Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) ("work may be substantial even if done on a part-time basis") (quoting 20 C.F.R. § 404.1572(a) (1989)).  As there is substantial evidence supporting the ALJ's finding that the photo clerk job constituted SGA, the court therefore does not find error in this regard.

Plaintiff also contends that the Commissioner's decision should be reversed because the ALJ failed to resolve a conflict between the VE's testimony and the DOT, as required by Social Security Ruling ("SSR") 00-4p.[14]  According to Plaintiff, she cannot perform the photo clerk position, based on the job requirements set out in the DOT and Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles ("SCO"), as well as the ALJ's finding that she can only occasionally use both hands for repetitive action, simple grasping, and reaching.  Plaintiff submits that, as generally performed, the photo clerk position requires frequent reaching, handling, and fingering (doc. 20 at 16, citing SCO at 210, exh. A at 2).  Plaintiff also states that, as she performed the job, it requires handling, grabbing, and/or reaching for three hours per workday (id. at 17), citing tr. 213), which "exceeds a limitation to occasional reaching and grasping, which is 1/3 of a workday or up to 2.7 hours" (id.).

Plaintiff contends that the ALJ failed to ask the VE if there was any conflict between her testimony and the DOT (doc. 20 at 16).  As noted previously, however, at the administrative hearing in this case, the ALJ asked the VE if Plaintiff had performed her past work in a manner that was consistent with the requirements of the DOT (tr. 86), and the VE responded affirmatively (id.).  The actual exchange, as recorded in the transcript, reflects that the ALJ posed the following question to the VE:

> All right.  Does the record, including the claimant's testimony, indicate that the jobs the claimant performed for the past 15 years[—]performed by her as they are generally performed in the national economy[—][are] consistent with the DOT?"

> Yes.

(tr. 86).

---

[14]  According to SSR 00-4p, "[n]either the DOT nor the VE . . . automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information."  SSR 00-4p, 2000 WL 1898704, *2 (Dec. 4, 2000).

The court finds that a reasonable reading of this exchange encompasses the question of whether there is any conflict between the VE's testimony and the DOT.  The VE's testimony, essentially, was that the demands of Plaintiff's prior jobs—which included the photo clerk position—were consistent with the requirements of the DOT; that being the VE's opinion, there obviously was no conflict between her testimony and the DOT.  As Plaintiff's hearing counsel raised no challenge or objection to the VE's testimony, although given the opportunity to question the VE, there was no apparent conflict for the ALJ to resolve concerning Plaintiff's past work and thus no error.  Gibson v. Astrue, Case No. 1:09-CV-677-AJB, 2010 WL 3655857, at *15 (N.D. Ga. Sept. 13, 2010) (indicating that when there is no apparent conflict between the VE's testimony and the DOT, the ALJ is not required to address SSR 00–4p); Brijbag v. Astrue, Case No. 8:06-CV-2356-T-MAP, 2008 WL 276038, at *2 (M.D. Fla. Jan. 31, 2008) (stating that "the ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT") (citation omitted).

Even if there was an actual conflict between the VE's testimony and the DOT, in the Eleventh Circuit the VE's testimony trumps the DOT because "the DOT is not the sole source of admissible information concerning jobs." Jones v. Apfel, 190 F.3d 1224, 1229–30 (11th Cir. 1999) (quotation omitted).  The DOT is not comprehensive, and the SSA does not consider it to be dispositive.  Id. at 1230.  Further, a VE is "an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  See also Hurtado v. Comm'r of Soc. Sec., 425 F. App'x 793, 796 (11th Cir. 2011) (stating "[e]ven assuming that an inconsistency existed between the VE's testimony and the DOT, the ALJ did not err by relying on the VE's testimony because it "trump[ed]" any inconsistent provisions of the DOT") (citing Jones, 190 F.3d at 1229–30); Jones v. Comm'r of Soc. Sec., 423 F. App'x 936, 939 & n.4 (11th Cir. 2011) ("Social Security Rulings are not binding on this court.  To the extent SSR 00–4p conflicts with Jones [v. Apfel, 190 F.3d at 1229–30], we are bound by Jones." (internal citations omitted)); Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) ("Our precedent establishes that the testimony of a [VE] 'trumps' an inconsistent provision of the DOT in this Circuit.").  See also, e.g., Riddle v. Colvin, Case No. 1:12–cv–787–WC, 2013 WL 6772419 (M.D. Ala. Dec. 20, 2013) (concluding that plaintiff had failed to establish a conflict between the

VE's testimony and the DOT, that the ALJ was only required to resolve "apparent" inconsistencies and no "apparent" conflict existed, and that—even if an actual conflict existed— under binding Eleventh Circuit law the VE's testimony trumps any inconsistent provisions in the DOT); Anderson, 2011 WL 3843683, at *4–5 (finding no conflict between the VE's testimony and DOT and noting, that even if a conflict existed, in the Eleventh Circuit an ALJ is entitled to rely on VE testimony because the VE's testimony "trumps" the DOT) (citing, among other cases, Jones v. Apfel, 190 F.3d. at 1229–30).

For all of the foregoing reasons, the court finds no reversible error in the ALJ's step four finding that Plaintiff could perform her past work as a photo clerk.  On this basis alone, adequate evidence supports the ALJ's decision that Plaintiff is not disabled.  Moreover, the court can assign no reversible error to the ALJ's step five finding—which also relied on the VE's testimony— that Plaintiff could work as a file clerk, storage facility rental clerk, and ticket seller.[15]  Even if there is a conflict between the VE's testimony that Plaintiff could perform these jobs and the DOT which the ALJ did not resolve as required by SSR 00-4p, as noted, in the Eleventh Circuit a VE's testimony "trumps" the DOT.[16]  See Jones, 423 F. App'x at 939 & n.4.

C.    Appeals Council's Denial of Plaintiff's Request for Review

---

[15]  Plaintiff submits that the file clerk job requires frequent reaching, handling and fingering; the storage facility rental clerk job requires frequent reaching and handling; and the ticket seller job requires constant reaching, handling and fingering (doc. 20 at 17, citing SCO at 333, 347, 365, exh. A at 3, 4, 5).  According to Plaintiff, all of these positions "are precluded by the functional capacity limitations" determined by the ALJ (id.).

[16]  The Commissioner contends that the VE's statement regarding the DOT was never withdrawn and therefore should apply to the other work she identified as being within Plaintiff's capabilities.  The court disagrees.  The ALJ's question, and the VE's response, were specifically about Plaintiff's "past work" only.  The statement may not be fairly read to include any "other work" later identified by the VE as being within Plaintiff's ability to perform.  Furthermore, where a VE's testimony is inconsistent with the DOT, SSR 00-4p requires the ALJ to "explain in the determination or decision how he or she resolved the conflict . . .  irrespective of how the conflict is identified."  SSR 00–4p, 2000 WL 1898704, *4.  In this case, at step five the ALJ simply states "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles" (tr. 47).  There is no explanation as to how the ALJ resolved any conflict.  Thus, to the extent there is a conflict between the VE's testimony and the DOT, the ALJ did not resolve it as provided in SSR 00-4p.

Nevertheless, as discussed above, the court is not bound by SSR 00-4p and instead must follow Eleventh Circuit precedent, which here provides that a VE's testimony "trumps" an inconsistent provision of the DOT.  See Jones, 190 F.3d at 1229–30.  The court therefore concludes that the ALJ's step five finding that Plaintiff could perform the file clerk, storage facility rental clerk, and ticket seller jobs identified by the VE is supported by substantial evidence.

Plaintiff contends that the "new and material evidence [she submitted to the AC] merits remand for further consideration by the ALJ, and demonstrates that the Commissioner's decision is unsupported by substantial evidence" (doc. 20 at 9).  According to Plaintiff, the AC wrongly rejected Mr. Hussein's FCE on the basis it was "about a later time" than the ALJ's decision, because Plaintiff's medical condition did not significantly deteriorate in the less than two-month period between the issuance of the ALJ's decision on December 6, 2013, and Mr. Hussein's evaluation on January 28, 2014.  In support, Plaintiff cites the January 2014 cervical spine MRI that indicates "little interval change" between 2012 and 2014, Dr. Makki's relatively unchanged treatment for several years, and Plaintiff's consistent reports of pain in Dr. Makki's records.  Plaintiff contends the AC's action is also contrary to the ALJ's decision in that the ALJ afforded significant weight to the medical records and assessments of Dr. Makki, who ordered the FCE and provided the only examining source opinion of record, whereas the ALJ only gave partial weight to the opinion of State examiner Dr. Molis.  The AC's failure to consider the FCE, Plaintiff maintains, resulted in harmful error, as the VE testified that an individual who could only sustain work activity for five or six hours daily—which is more than the FCE indicates Plaintiff could do—would be unemployable.  The Commissioner responds that Plaintiff's argument fails because the evidence submitted to the AC would not have changed the ALJ's decision.

Generally, a claimant is allowed to present new evidence at each stage of the administrative review process "[s]ubject to the limitations [in 20 C.F.R. §§] 404.970(b) and 404.976(b)." 20 C.F.R. § 404.900(b).  The AC has discretion not to review the ALJ's denial of benefits.  20 C.F.R. § 404.967.  Nevertheless, the AC must consider "new and material evidence" that "relates to the period on or before the date of [the ALJ's] hearing decision" and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. § 404.970(b).  The evidence must be "chronologically relevant" to the time period considered by the ALJ in order to be considered by the AC.  Ingram, 496 F.3d at 1261; *see also* Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).  A reviewing court may remand a cause under "sentence four" of 42 U.S.C. § 405(g) when the claimant has submitted new evidence to the AC which the AC did not adequately consider in denying the claimant's request for review.  To obtain a sentence four remand, the claimant must show that, in light of the new evidence

submitted to the AC, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole or, similarly, that the new evidence renders the denial of benefits erroneous. Ingram, 496 at 1266–67; *see also* 20 C.F.R. § 404.970(b); Caces v. Comm'r of Soc. Sec. Admin., 560 F. App'x 936, 941 (11th Cir. 2014) ("The district court must consider the new evidence submitted to the AC and determine whether the Commissioner's decision is contrary to the weight of the evidence currently of record.") (citing 20 C.F.R. § 404.970(b)).

Here, the court concludes that Plaintiff has not made the requisite showing to warrant a sentence four remand based on the additional evidence she presented to the AC.  The January 18, 2014, office note and January 24, 2014, MRI report from Dr. Makki, and Mr. Hussein's January 28, 2014, FCE were completed after the date of the ALJ's decision on December 6, 2013; thus, on their face, these documents do not relate to the chronically relevant period, i.e., the period on or before the decision date.  As noted, however, Plaintiff submits that the new documents do relate to the relevant period because they show her condition was the same in late January 2014, when those records were created, as it was in early December 2013, when the ALJ issued his decision.

In late January 2014, Plaintiff reported severe symptoms to Dr. Makki, including increased pain, headaches, and upper extremity weakness (tr. 640).  In light of Plaintiff's report and his physical findings at that time, Dr. Makki ordered additional physical therapy sessions, an FCE, facet injections, and a new MRI of the cervical spine (*id.*).  He also advised Plaintiff that the "natural pathology" of her conditions would likely result in their becoming progressively worse (*id.*).  Dr. Makki's January 18, 2014, report—including its mention of Plaintiff's subjective complaint of increased pain, his physical findings, his treatment and diagnostic recommendations, and his advice to Plaintiff about the expected prognosis of her conditions—seems to suggest a possible recent deterioration in Plaintiff's spinal conditions.  The report does not implicitly or explicitly relate its findings to the period prior to December 6, 2013, the date of the ALJ's decision, thus establishing the necessary chronological relevance.  *See* Ingram, 496 F.3d at 1261.

The January 2014 cervical spine MRI ordered by Dr. Makki reflects mild changes, with "little interval change" since the last examination in December 2012 (tr. 643–44).  Notably, the

cervical spine MRI taken in July 2011 also revealed only mild to moderate changes (tr. 381).[17]  Even if the additional evidence submitted by Plaintiff could be said to relate to the chronologically relevant period because it is consistent with it, the additional evidence does not render the denial of benefits erroneous.  While the January 2014 cervical spine report may reflect little objective change in Plaintiff's spinal conditions between the time of the ALJ's decision on December 6, 2013, and the creation of the new evidence, the report does not support a finding of constant, severe pain for the period under review by the ALJ.  Rather, it supports the ALJ's conclusion that at most Plaintiff experiences a moderate level of pain.  Thus, the January 2014 MRI report would not have changed the ALJ's decision.

As to the January 28, 2014, FCE, even if Mr. Hussein's findings were accepted, the court concludes that the FCE does not establish the necessary chronological relevance to the time period before December 6, 2013.  The findings are significantly more severe than Plaintiff's previous records indicate, including that Plaintiff's "current functional abilities and musculoskeletal findings demonstrate that she **cannot work at any level of work** [emphasis in original].  She exhibited functional deficits with the necessary standing, walking, lifting, stooping, twisting and squatting tolerances that are required to perform any essential job demands" (tr. 649).  Mr. Hussein's findings and conclusion reflect a significantly more severe condition than do Dr. Makki's 2011 through 2013 records, Plaintiff's prior physical therapy records, or Dr. Molis' opinion.  In fact, Plaintiff has not pointed to, nor is the court aware of, any medical evidence or opinion during the chronologically relevant period that suggests that Plaintiff was completely unable to work.  Rather, the weight of the evidence indicates otherwise.  As previously discussed, Dr. Makki noted frequently that Plaintiff's symptoms were under good control (*see, e.g.,* tr. 524, 529, 533); a physical therapist reported in October 2013 that Plaintiff had improved significantly with treatment, with a 30% decrease in symptoms that could be maintained with a home exercise program (tr. 615); objective tests largely reflected mild to moderate findings (tr. 379, 380, 381, 586, 594); and the only RFC assessment from an acceptable medical source, Dr. Molis, indicated that in April 2013 Plaintiff retained the ability to perform a range of light work (tr. 117–19).

---

[17]  Moreover, although the additional evidence does not include objective testing of the lumbar spine in January 2014, there appears to have been little objective change in condition of the lumbar spine between the time of Plaintiff's July 2011 MRI (tr. 380) and her March 2013 MRI (tr. 594).

In short, the court concludes that Plaintiff has failed to show that—in light of the new evidence she submitted to the AC and relies on in this appeal (specifically, Dr. Makki's January 2014 office note, the January 2014 cervical MRI report, and Mr. Hussein's January 2014 FEC)—the ALJ's unfavorable decision is not supported by substantial evidence or that the new evidence renders the denial of benefits erroneous.  Ingram, 496 at 1266–67.  Therefore, the court finds no reversible error in the AC's denial of review.

VIII.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**, that this action is **DISMISSED,** and that the clerk is directed to close the file.

At Pensacola, Florida this   3rd   day of August 2015.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**